GAIDRY, J.
|3In this suit involving the application of Louisiana’s Private Employment Services law, an out-of-state employment agency appeals a judgment dismissing its petition for judicial review of a decision of the Louisiana Workforce Commission. We affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Universal Placement International, Inc. (“Universal”), operates an employment service in California. Pursuant to placement contracts between Universal and Filipino teachers, in exchange for the payment of fees by the teachers, Universal helped to place the teachers in Louisiana school districts, procured and transmitted all necessary immigration documents, arranged housing, signed lease agreements, and assisted in obtaining financing for the Filipino teachers’ expenses. Although Universal was licensed to do business in Louisiana, Universal did not have a license to operate a private employment service in Louisiana, as required by La. R.S. 23:104.[1]
In September 2009, the Louisiana Federation of Teachers and the American Federation of Teachers filed a complaint with the Louisiana Workforce Commission alleging that Universal was in violation of the Private Employment Service law, La. R.S. 23:101-121. The Louisiana Workforce Commission conducted a hearing, after which the hearing officer concluded that Universal was in fact operating a private employment service in the state of Louisiana without a license to do so. In addition to failing to have a license in violation of La. R.S. 23:104, the hearing officer also found that Universal violated the Private Employment Service law by: charging a|/‘marketing fee,” in violation of La. R.S. 23:111(B)(2)[2]; collecting place *1157 ment fees from teacher-applicants prior to the actual commencement of work, in violation of LAC 40:XV.107(A)(5)[3]; collecting fees from teacher applicants who did not ultimately commence work on the job procured by Universal, in violation of La. R.S. 23:lll(B)(3)(e)[4] and LAC 40:XV.107(A)(6)[5]; requiring the teachers it placed to pay employment services fees for the first twenty-four months of employment, in violation of La. R.S. 23:lll(B)(3)(a)[6]; and failing to adjust its fees upward or downward based upon the actual gross earnings of the applicant, in violation of La. R.S. 23:111 (B)(3)(b)[7] Universal was ordered to pay a fine and litigation expenses and to refund placement fees paid by the Filipino teachers. | .^Universal filed a petition for judicial review, and after a hearing, the district court affirmed the decision of the Louisiana Workforce Commission. Universal has appealed, assigning the following trial court errors:
1. The hearing officer’s conclusion that Universal was subject to the provisions of Louisiana’s Private Employment Services law was arbitrary and capricious and not supported and sustainable by a preponderance of the evidence.
2. The hearing officer’s decision to award refunds to the teachers exceeded the Louisiana Workforce Commission’s statutory authority and was an abuse of discretion.
3. The Louisiana Workforce Commission’s denial of Universal’s application for a license based upon the lack of an in-state presence was unconstitutional.
4. The Louisiana Workforce Commission’s denial of Universal’s application for a license based upon Universal’s collection of a fee before an applicant starts a job was improper.
*1158 DISCUSSION
The Louisiana Administrative Procedure Act provides for judicial review of administrative adjudications. Louisiana Revised Statutes 49:964(G) provides:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or | fi(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
Pursuant to paragraph (G)(6), the district court is a fact finder that weighs the evidence and makes its own conclusions of fact by preponderance of the evidence. MultiCare, Inc. v. State, Dept. of Health & Hospitals, 00-2001, p. 4 (La.App. 1 Cir. 11/9/01), 804 So.2d 673, 675. Accordingly, while this court does not defer to the district court’s legal conclusions, we do defer to the district court’s factual determinations and use a manifest error standard of review where the legislature has empowered the district court with the function of fact finding. Id.
Universal first alleges that the hearing officer’s finding that it was operating an employment service in this state was arbitrary and capricious and not supported by a preponderance of the evidence. Universal admits that it operates an employment service in the State of California. However, Universal argues that because it provides other services not envisioned or contemplated by Louisiana’s Private Employment Service law, it was error to conclude that “simply because the Filipino teachers were placed in Louisiana and because Universal contracted with certain Louisiana school districts, Universal qualifies as a ‘private employment service’ ” under Louisiana law.
The starting point for the interpretation of any statute is the language of the statute itself. LaMartina v. Louisiana Patient’s Compensation Fund, 07-2281 (La.App. 1 Cir. 7/21/08), 993 So.2d 249, 253. When a law is clear |7and unambiguous and does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in the search of the intent of the legislature. La. C.C. art. 9. Furthermore, the words of a law must be given their generally prevailing meaning. La. C.C. art. 11; Glasgow v. PAR Minerals Corporation, 10-2011 (La.5/10/11), 70 So.3d 765, 768. Louisiana Revised Statutes 23:101 defines an “employment service” as a person who, for a fee, either “[ojffers or attempts to procure, directly or indirectly, employment for an applicant or candidate” or “[pjrocures or attempts to procure an employee for an employer.” Giving the words of the stat *1159 ute their generally prevailing meaning, the definition of “employment service” contained in La. R.S. 28:101 is clear and unambiguous, and therefore no further interpretation will be made in search of the intent. There is no doubt that Universal offered to procure employment for applicants (the Filipino teachers) or that they sought to procure employees for employers (the Louisiana school districts). The statutory definition is clear, and the fact that Universal offers other services to its applicants is immaterial. Accordingly, we find no error in the conclusion that Universal meets the definition of an employment service in La. R.S. 28:101.
Universal also argues that although it operates an employment service in California, it does not operate an employment service “in this state” so as to fall under the licensing requirement of La. R.S. 23:104. However, Universal’s director, Hothello “Jack” Navarro, testified that he solicited Louisiana school districts and submitted proposals to supply teachers for them, both by telephone and in person in Louisiana. Universal cited a Louisiana Attorney General Opinion[8] stating that the law does not require all employment-service related activities to be conducted in or from a licensed |semployment service office. For instance, telephone contact from a car or out-of-town interviewing could not be conducted from a licensed employment service office. While it may be true that an employment service may have to conduct certain activities from outside of its licensed office, Universal had no license in Louisiana, and was clearly operating an employment service in Louisiana by offering to procure employees for employers here. As such, its activities would fell under the licensing requirements of La. R.S. 23:104.
Universal next argues that because the hearing officer lacked authority to award refunds in derogation of valid contractual agreements, La. R.S. 49:964(G)(2) permits this Court to reverse and set aside the hearing officer’s findings. The contracts between Universal and the Filipino teachers, which were executed outside of Louisiana, contained a provision stating that the contracts would be governed by and construed in accordance with the laws of the State of California. Universal alleges that because the contracts are valid under California law, and regardless of the licensing issue, the contracts must be construed as valid and enforceable. Furthermore, Universal alleges that the penalty for violating La. R.S. 23:104 can only be as set forth in La. R.S. 23:113 (“A person who acts as an employment service without a license as provided in this Part shall be punished by a fine of not less than fifty nor more than one thousand dollars per violation, by imprisonment for not more than six months, or both.”); if the legislature had intended for the validity or enforceability of the contracts to be affected by the failure of the employment service to obtain a license, it could have provided for that in the statute, but it did not do so. Finally, Universal argues that although La. R.S. 23:108(C) provides discretionary grounds for |flthe issuance of a refund, a refund was not appropriate under the circumstances of this case.
The hearing officer’s findings specifically state that while the Louisiana Workforce Commission is without authority to nullify the contracts between Universal and the Filipino teachers, this does not divest the Workforce Commission of its legislative mandate to regulate and license private employment services:
*1160 The State of Louisiana was not a party to the contract with the teachers and it cannot be bound or prevented from exercising its sovereign power under the statutory scheme because the parties included a California choice of law provision in the contract. The parties confuse the question of Louisiana’s remedial power to order refunds and levy penalties in accordance with the statutory scheme with the question of whether the contract is null. Simply stated, a choice of law provision in a contract between private parties has no effect on this Commission[’]s regulatory powers granted it by statute.
Pursuant to La. R.S. 23:108, in cases of violations of the provisions of the Private Employment Services law, a fine of not more than five hundred dollars can be levied against the employment agency,[9] reasonable litigation expenses may be awarded,[10] and a refund to the applicant may be ordered.[11] The remedies awarded by the hearing officer in this matter addressed violations of Louisiana’s Private Employment Services law; they did not affect the validity of the contracts. The issuance of a refund in accordance with statutory provisions did not exceed the authority given to the Workforce Commission. This assignment of error is without merit.
Universal next argues that the denial of its license application based upon the lack of an in-state presence is unconstitutional. In November 2009, after the filing of the complaint against Universal with the Louisiana hnWorkforce Commission, Universal applied for a private employment service license in Louisiana. This application was denied. Universal alleges that because one reason given for the denial of its license was its failure to maintain an office in Louisiana and designate an individual as the on-site manager, the denial was unconstitutional, and the hearing officer’s findings should be reversed. However, the only reference to any constitutional issue in Universal’s petition for judicial review is the following:
Universal submits ... that the pertinent statutes and regulations are unconstitutional as applied in this case and, as such, the findings of the hearing officer should be reversed and set aside.
The judgment on judicial review of the administrative decision which is on appeal herein states:
The Court affirms the decision of the Louisiana Workforce Commission except with respect to constitutional issues, which are cognizable by this Court in its original jurisdiction, and it is preserved there over to the appellant.
Because the constitutional issues were not ruled upon by the court, and because this matter can be disposed of on non-constitutional grounds, we need not address the constitutionality of the Louisiana Private Employment Services law. See Ring v. Dept. of Transp. & Development, 02-1367 (La.1/14/03), 835 So.2d 423, 427-28.
Universal’s final assignment of error is that the Louisiana Workforce Commission’s denial of its application for a license based upon the contractual provision requiring a teacher applicant to pay a fee prior to actual commencement on a job was improper. Universal does not allege that it does not violate LAC 40:XV.107(A)(5), which provides that no employment service shall charge or receive a fee from an applicant prior to the actual *1161 commencement of work on a job procured by the employment service. Rather, Universal argues that due to the nature of the services it |,,provides, it should be exempt from this requirement. Universal cites no authority for its position that it should be exempt from the rules which are rooted in public policy considerations and which apply to all other private employment services in Louisiana. Thus we find no error in the finding that Universal violated the prohibition against charging a fee prior to the commencement of work.
DECREE
For the reasons set forth herein, the judgment of the district court on judicial review is affirmed. Costs of this appeal are assessed to appellant, Universal Placement International, Inc.
AFFIRMED.

. La. R.S. 23:104 provides, in pertinent part: "No person, company, corporation, or partnership shall operate, solicit, or advertise an employment service in this state unless licensed by the director.”

. La. R.S. 23:111(B)(2) provides:
No employment service shall charge any fee for the registration of applicants or candidates for employment or for assistance or job referrals, or require applicants or candidates to subscribe to any publication or to any photographic, postal card, or letter ser *1157 vice, or to contribute to the cost of advertising.

. LAC 40:XV. 107(A)(5) provides, in pertinent part:
A. No employment service ... shall engage in the following conduct:
5. charge or receive a fee from an applicant prior to the actual commencement of work on a job procured by the employment service....

. La. R.S. 23:111(B)(3)(e) provides, in pertinent part:
(e) [A]n employment service shall not receive a fee from an applicant who does not commence work on a job procured by the employment service.

. LAC 40:XV.107(A)(6) provides, in pertinent part:
A. No employment service ... shall engage in the following conduct:
6. ... an employment service shall not receive a fee from an applicant who does not commence work on a job procured by the employment service.

. La. R.S. 23:lll(B)(3)(a)provides:
Where the procured employment is one for which the applicant is to be paid a salary, the fee charged the applicant will be based on the employment service’s schedule of fees as applied to the first year’s gross earnings of the applicant.

.La. R.S. 23:111(B)(3)(b) provides, in pertinent part:
Where procured employment is one for which the applicant will be paid on a straight commission basis, or on the basis of a salary plus other remuneration, or a drawing account or guarantee against commission, the fee charged the applicant shall be based on the employment service’s schedule of applicant fees applied to the first year’s gross earning of the applicant as estimated by the employer. At the conclusion of the first year of employment and upon proper proof of actual gross earnings of the applicant, said fee shall be adjusted upward or downward as is appropriate, provided that under no circumstances will overtime pay be included in gross earnings. Any request for adjustment in fees must be made in writing by the agency or employee within sixty days after one year of employment or termination, whichever is sooner.

. La. Atty. Gen. Op. 91-126, 1991 WL 575124 (La.A.G.1991).

. La. R.S. 23:108(B)(1).

. La. R.S. 23:108(B)(2).

.La.R.S. 23:108(C).